# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA, )
        Plaintiff, )    Case No. 2:16-cr-00046-GMN-PAL
vs. )
         )    **ORDER**
RYAN BUNDY, )
        Defendant. )

This matter is before the Court on Defendant Ryan C. Bundy's Motion for Own Recognizance or Bail Pending Trial (ECF No. 1082). On January 9, 2017, the Court granted Defendant's motion to reopen the detention hearing to afford him the opportunity to (1) present evidence to refute the probable cause finding underlying the superceding indictment and the rebuttable presumption that Defendant poses a substantial risk of nonappearance and a danger to the community; and (2) to present evidence showing that he does not pose a risk of nonappearance or danger to the community and that conditions of pretrial release can be fashioned. *See Order* (ECF No. 1263) (the provisions of which are incorporated into this order as if set forth in their entirety).

## BACKGROUND AND DISCUSSION

The reopened detention hearing was conducted on January 31, 2017. Mr. Bundy elected to testify under oath and be subject to cross-examination. He testified at length on his own behalf and was cross-examined by counsel for the Government. Defendant called three other witnesses: (1) retired Las Vegas Metropolitan Police Department (LVMPD) officer Mark McEwen, (2) Shem Teerlink, and (3) Defendant's wife, Angela Bundy. Defendant also submitted numerous letters from family members, friends, and members of his community attesting to his good character, and their belief that he is not a danger to any other person or the community, and that he does not pose a risk of nonappearance. *See*

*Notice of Filing Exhibits A Through Q Letters in Support of Ryan C. Bundy* (ECF Nos. 1445, 1473, 1533).

    The Government submitted to following exhibits as rebuttal to Defendant's evidence:

1. Audio of a March 17, 2014 telephone conversation between Defendant Ryan Bundy and BLM Special Agent Johnson;

2. Video of events on March 28, 2014 when trucks and cattle trailers operated by BLM contractors entered the area to commence cattle removal operations and were met by some of the Defendants or their supporters who were on foot or horseback;

3, 4. Video interviews with Defendant Ammon Bundy on April 12, 2014 as he proceeded in a vehicle to the Impoundment Site where BLM officers and cattle were located;

5. Video of the encounter between Defendant Ammon Bundy and BLM Special Agent D. Love at the gate to the Impoundment Site;

6. Video of the encounter between Defendant Ammon Bundy and Las Vegas Metropolitan Police Officer T. Roberts at the gate to the Impoundment Site;

7. Video of Defendant Ryan Bundy and BLM Special Agent D. Love discussing the release of the cattle;

8. Video interview of Defendant Ammon Bundy on April 12, 2014 following the release of the cattle;

9. Video of Defendant Ryan Bundy addressing Defendants' supporters regarding the resolution of the incident on April 12, 2014;

10. Video of an interview with Defendant Ammon Bundy on April 12, 2014 after the release of the cattle and conclusion of the incident at the Impoundment Site;

11. November 1, 2016 Washington Post newspaper article that quotes Defendant Ryan Bundy; and

12. Court Minute Order regarding the hearing on December 9, 2016.

Because these exhibits were not played or presented during the hearing itself, the Court granted Defendant Bundy leave to file a written objection or response to the Government's exhibits. Defendant Bundy filed his written response and objection to the Government's exhibits on February 7, 2017. *Response* (ECF No. 1532). The Court has read and considered that response and objection.

18 U.S.C. § 3142(g) states that in determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community, the court shall take into account (1) the nature and circumstances of the offense charged,

1  including whether the offense is a crime of violence, or involves a firearm, explosive, or destructive
2  device; (2) the weight of the evidence against the person; (3) the history and characteristics of the
3  defendant including his character, physical and mental condition, family ties, employment, financial
4  resources, length of residence in the community, community ties, past conduct, history relating to drug
5  or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the
6  nature and seriousness of the danger to any person or the community that would be posed by the
7  person's release.
8      As previously stated, Defendant Bundy's family ties, residential and employment history, and
9  lack of any history of alcohol or controlled substance abuse generally support a finding that he does not
10 pose a risk of nonappearance or a danger to the community, and that to the extent he does, conditions of
11 pretrial release could be fashioned to address those risks. *Order* (ECF No. 1263), pg. 13.  Defendant
12 presented additional evidence at the hearing in support of his strong family and community ties, his
13 work history, and his generally responsible and peaceful nature.  This includes numerous letters from
14 family members, friends, and members of Defendant's community.  It also includes the hearing
15 testimony of Defendant's long time friend Shem Teerlink, retired LVMPD Officer Mark McEwen and
16 Defendant's wife, Angela Bundy, who testified to Defendant's good moral character, and responsible
17 and caring nature, as a spouse, parent, family member and friend.  The issue is whether Defendant
18 should nevertheless be detained as a risk of nonappearance or danger to the community based on the
19 nature and circumstances of the charges against him, the weight of the evidence in support of those
20 charges, and other information provided to the Court relating to the risk of nonappearance or danger to
21 the community.
22     18 U.S.C. § 3142(f) states that "[t]he facts the judicial officer uses to support a finding pursuant
23 to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any
24 other person and the community shall be supported by clear and convincing evidence."  The
25 Government has the burden of showing by a preponderance of the evidence that the defendant poses a
26 risk of flight. *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States*
27 *v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).
28     18 U.S.C. § 3142(j) states that "[n]othing in this section shall be construed as modifying or

limiting the presumption of innocense."  Although the Court is allowed to consider the weight of the evidence against the accused in determining whether he should be detained, this is the least important of the various factors.  *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).  *Motamedi* further states:

> Although the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty.  *See United v. Edson*, 487 F.2d 370, 372 (1st Cir. 1973); *United States v. Alston*, 420 F.2d 176, 179 (D.C.Cir. 1969).  These factors may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community.  *See* 18 U.S.C. § 3142(g); *Edson*, 487 F.2d at 372.  Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment.

*Id.*

The superceding indictment charges Defendant with (1) conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371; (2) conspiracy to impede or injure a federal officer in violation of 18 U.S.C. § 372; (3) use and carry of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) and 2; (4) assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), (b) and 2; (5) threatening a federal law enforcement officer in violation of 18 U.S.C. § 115(a)(1)(B) and 2; (6) obstruction of the due administration of justice in violation of 18 U.S.C. § 1503 and 2; (7) interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951 and 2; and (8) interstate travel in aid of extortion, 18 U.S.C. § 1952 and 2.  *Superceding Indictment* (ECF No. 27).  Some of these charges give rise to a rebuttable presumption that Defendant poses a substantial risk of nonappearance and a danger to the community.  *Order* (ECF No. 1263), pg. 7.

The superceding indictment alleges that "[o]n March 17, 2014, a BLM Special Agent notified [Defendant Ryan Bundy] that the Special Agent was available to answer any questions about the impoundment operation. [Defendant Ryan Bundy] became angry and threatened to interfere, stating that he and his family would 'do whatever it takes' and he would 'have several hundred' with him to prevent the BLM from removing the trespass cattle.  When asked whether his use of 'whatever it takes' included physical force or violence, [Defendant Ryan Bundy] replied: 'I will do whatever it takes; you interpret that the way you want.'"  *Superceding Indictment* (ECF No. 27), ¶ 51.

The superceding indictment alleges that on April 12, 2014 Defendant Cliven Bundy led a rally

of hundreds of his followers at a Staging Site located approximately 3.5 miles from the Impoundment Site, and directed gunmen and other followers to travel to the Impoundment Site, and to shutdown the freeway near the Impoundment Site. ¶ 125. Defendants Ammon Bundy and Mel Bundy led groups of gunmen and Followers to the Impoundment Site where armed gunmen and Followers confronted federal law enforcement officers. ¶¶ 128-131. The gunmen took up positions from which they trained firearms on the federal officers in the Impoundment Site. Because of the threat of armed violence posed by the gunmen, the federal officers were forced to give into the Defendants' demands and leave the Impoundment Site, abandoning the cattle to Defendant Cliven Bundy. ¶ 142. The superceding indictment further alleges that "[h]aving been forced to meet the conspirators' demands, the SAC [Special Agent in Charge] met with D. Bundy and [Ryan] Bundy near the main entrance to the Impoundment Site to negotiate the departure of the law enforcement officers. While the Followers, including gunmen, held their position below at the gate, [Ryan] Bundy demanded that the SAC order his officers to leave the Impoundment Site within two hours." ¶ 143. Ryan Bundy thereafter assumed a leadership role in ensuring that the officers left the Impoundment Site quickly and then organized the Followers to release the cattle. Ryan Bundy and others gathered the cattle and drove them out of the Impoundment Site. ¶¶ 144-145.

During his hearing testimony, Defendant Bundy denied that he used threats of force or violence against other persons, including the contract auctioneer hired by the BLM. He also denied that he had specific knowledge that armed members of private militias had assembled at the Bundy Ranch prior to incident on April 12, 2014 to assist the Defendants' efforts to prevent the BLM from removing Defendant Cliven Bundy's cattle from public lands. Defendant testified and argued that the confrontation at the Impoundment Site on April 12, 2014 was a peaceful public protest, and that it was BLM officers and other federal officers who were the aggressors, and who pointed firearms at the protesters and threatened to shoot them.

Video and photograph evidence presented during the hearing supports the allegation that Defendant Cliven Bundy directed, or at minimum encouraged, gunmen and other Followers to travel to the Impoundment Site on April 12, 2014 to confront the BLM officers and compel them to release the cattle. Photographs also show that Defendant Ryan Bundy was present on the stage with Cliven Bundy

when this announcement was made. Also present was Defendant Ryan Payne, whom the indictment alleges was a leader and organizer of the conspiracy who recruited and organized gunmen, and led the armed assault on federal officers at the Impoundment Site. *Superceding Indictment* (ECF No. 27), ¶¶ 62, 88, 117. Photographs introduced during the hearing, also depict individuals armed with rifles or "long-guns" among the crowd of people who approached the Impoundment Site. Other photographs depict individuals on the Interstate 15 Freeway bridge overlooking the Impoundment Site, and along the banks beneath the freeway bridge apparently aiming firearms in the direction of the federal officers. Defendant Bundy testified that during the protest, he was located on the freeway near the bridge, but not directly on it. Other photographs show federal officers pointing their weapons in the direction of the protestors or the individuals holding or aiming firearms at the officers.

Defendant Bundy was wearing a holstered pistol during the April 12, 2014 confrontation. There is no allegation, however, that he withdrew the firearm from his holster at any point. There is no indication that Defendant Bundy, himself, acted in a physically aggressive or threatening manner toward the federal officers in the Impoundment Site. Defendant met with Las Vegas Metropolitan Police Department officers, including Mark McEwen, who were in the area near the Impoundment Site. Defendant Bundy also met with the BLM Special Agent in Charge at the end of the confrontation, after the BLM and other federal law enforcement officers decided to leave the Impoundment Site and leave the cattle behind. The Government alleges that the federal law enforcement officers were forced to do so because of the threats posed by the armed gunmen who had a tactical advantage over them, and to avoid potential bloodshed. *Superceding Indictment* (ECF No. 27), ¶¶ 135-145.

After the conclusion of the April 12, 2014 confrontation, Defendant Ammon Bundy gave a recorded video interview in which he stated that Defendants' strategy in moving on the Impoundment Site was to get the county sheriff, i.e., the Las Vegas Metropolitan Police Department, to intervene and disarm and/or direct the BLM officers to leave the area and permit the Bundys and their supporters to retrieve the cattle. *Government's Hearing Exhibit 10.* Ammon Bundy stated that "our intent was peaceful . . . although we did have militia and weapons, I think that was important because they, they didn't know for sure if we were going to fire on them."

Defendant Ryan Bundy argues that the Government has twisted or misrepresented his

statements. The Government provided the Court with the recording of the March 17, 2014 telephone call between BLM Special Agent Johnson and Defendant Bundy. *Government's Hearing Exhibit 1*. Having listened to that recording, the Court finds that the superceding indictment accurately quotes Defendant Bundy's statements.[1] The indictment's description of Defendant Bundy as "angry" also appears accurate. The recording shows that Special Agent Johnson informed Defendant Bundy that the BLM was coming to remove the cattle and that he wanted to determine from Defendant Bundy whether he and his family would interfere with or resist the BLM's impoundment operation. Defendant made clear that the only way to avoid a confrontation would be for the BLM not to come. Defendant Bundy also set forth his religious and constitutional views that the Federal Government has no right of ownership or control over public lands in Nevada or other states; that the lands belong to the people; that the BLM or other federal agencies are unlawful; and those who are employed by these agencies are engaged in immoral activity. Defendant Bundy argues that his statements were consistent with the use of lawful methods to oppose what he considers to be the unlawful actions of the BLM, in particular, and the Federal Government, in general. A reasonable interpretation of Defendant Bundy's statements during the March 17, 2014 telephone call, however, was that he and his associates would use force to resist the BLM's impoundment efforts. In his written response and objection, Defendant also argues that the recording has or may have been altered by the Government. *Response* (ECF No. 1532). No reliable evidence or information has been provided to support that assertion.

During the January 31, 2017 hearing, Defendant Bundy also expounded on his view of Article I, Section 8 of the United States Constitution regarding the militia.[2] According to Defendant Bundy, the "people" constitute the militia and have the right to take action against the Federal Government and its

---

[1] The superceding indictment alleges that Defendant Bundy made similar public statements on March 25 and 28, 2014. *Superceding Indictment* (ECF No. 27), ¶¶ 53-54. Defendant Bundy has not refuted those allegations.

[2] Article I, Section 8 states that Congress shall have power:

> "To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;" and "To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress."

agents when they infringe on the rights of the people or local governments. The Government also provided the Court with a copy of a November 1, 2016 Washington Post newspaper article in which Defendant Bundy reportedly stated that another protest action would be justified if President Obama went ahead with plans to create a huge national monument abutting the Bundy family's ranch. The article quoted Defendant as follows: "'Read the Declaration of Independence,' he said. 'It says right there that if the government becomes abusive, it's our right and our duty to abolish that government. If the government won't restrain itself, whatever happens is their own fault.'" *Government's Hearing Exhibit 11*. The Court does not accord substantial evidentiary weight to newspaper articles, even where they purport to quote a person verbatim. The reported statements, however, appear to be consistent with Defendant's March 17, 2014 telephone discussion with Special Agent Johnson and his testimony at the hearing. In his written response and opposition, Defendant disputes the lawfulness of declaring Gold Butte a national monument. *Defendant's Response* (ECF No. 1532). The Court does not consider the legality of the President's or the Government's action in declaring Gold Butte a national monument. What is relevant to the Court's decision is whether Defendant Bundy is likely to use physical force or violence, or the threat thereof, against Government officers and agents if he believes they are acting unconstitutionally or illegally. It, in fact, appears that Defendant Bundy reserves the right to use armed force against the Federal Government and its officers and agents if he believes they are acting unconstitutionally or illegally. Such unconstitutional or illegal acts appear to include federal assertion of ownership or control over public lands in the States.

A person cannot be prosecuted or punished for the opinions he holds. Nor may the Court detain a defendant simply because he expresses views about the government or the court that may cause concern. Here, however, the indictment charges that Defendant Bundy, together with others, used the threat of violent force to compel the BLM to cease its impoundment operation, withdraw from the area, and abandon the cattle that it had rounded-up. Defendant Bundy's statements prior to and during the January 31, 2017 hearing support the finding that if he was released from detention, he would use physical force, or the threat of such force, to prevent the federal government from enforcing court orders, or to oppose other federal action with respect to public lands that Defendant Bundy believes are unconstitutional and illegal.

Defendant Bundy argues that he will not pose a flight risk if he is released from detention. He also made a solemn promise to appear in court as required. Based on all the evidence presented, it appears unlikely that Defendant would flee the jurisdiction or go into hiding. As far as his promise to appear in court, Defendant appears to place importance on the solemnity of the oaths or promises he gives. Defendant, however, also views the prosecution against him as unconstitutional and illegal, and he does not recognize this court's jurisdiction over him. Thus, notwithstanding his promise, it is possible that Defendant does not feel bound by a promise given to the Court. There is a substantial risk that if Defendant was released, he would resist efforts to require him to appear in court. The Court therefore finds by a preponderance of the evidence that Defendant Bundy poses a substantial risk of nonappearance.

The Court finds by clear and convincing evidence that Defendant Ryan Bundy poses a substantial risk of danger to other persons or the community. The specific risk of danger posed by Defendant Bundy is that he will use violent force, or the threat of violent force, to resist the Government's efforts to enforce court orders or to oppose other federal action that he believes is unconstitutional and illegal. The Court further finds that there are no conditions or combination of conditions of release that can be fashioned to reasonably assure Defendant's future appearance as required or to protect other persons or the community against the risk of danger posed by Defendant.

In its prior order, the Court addressed Defendant Bundy's argument that his continued pretrial detention violates his Fifth Amendment right to due process of law. *Order* (ECF No. 1263), pgs. 16-19. The Court found that the anticipated length of Defendant's detention through trial and the reasons for the delay did not weigh significantly in favor of finding a due process violation. The Court deferred consideration of the third factor— the strength of the evidence indicating risk of flight or danger to the community—until after the reopened detention hearing. Because the Defendant poses a substantial risk

. . .

. . .

. . .

. . .

of danger to the community and a risk of nonappearance, his continued detention through the anticipated conclusion of trial in May 2017 does not violate his right to due process of law. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ryan C. Bundy's Motion for Own Recognizance or Bail Pending Trial (ECF No. 1082) is **denied**.

**IT IS FURTHER ORDERED** that Defendant Ryan Bundy shall continue to be detained pending trial because he poses a substantial risk of nonappearance and a substantial risk of danger to other persons or the community.

DATED this 7th day of February, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge