**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:16-cr-46-GMN-PAL |
| vs. ) | |
| ) | **ORDER** |
| RYAN C. BUNDY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Pending before the Court is pro se Defendant Ryan C. Bundy's ("Defendant's") Objection (ECF No. 1946) to Magistrate Judge Peggy A. Leen's Order (ECF No. 1892) denying co-defendant Defendant Ammon E. Bundy's ("A. Bundy's") Ex Parte Motion for Hearing Regarding Custody Conditions (ECF No. 1743).[1] The Government did not file a response to the Objection, and the time to do so has passed.[2]

When reviewing the order of a magistrate judge, a district judge should only set aside the order if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); D. Nev. R. IB 3-1(a). A magistrate judge's order is "clearly erroneous" if the court has "a definite and firm conviction that a mistake has been committed." *See Burdick v. Comm'r IRS*, 979 F.2d 1369, 1370 (9th Cir. 1992). When reviewing the order, however, the magistrate judge "is afforded broad discretion, which will be overruled only if abused." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (citation omitted). The district judge "may not

---

[1] Defendant filed a Motion for Joinder (ECF No. 1745), which Judge Leen granted within her Order (Order, ECF No. 1892). Defendant's motion included substantive argument that Judge Leen reviewed and considered. (*Id.* 2:6–27).

[2] The original motion was ex parte, and Judge Leen specifically noted that "the government is unlikely to take a position on the issue at hand." (*Id.* 1:23).

simply substitute its judgment" for that of the magistrate judge. *Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

    A. Bundy's original motion argued that the Nevada Southern Detention Center ("NSDC") was impeding on his Sixth Amendment right to effective assistance of counsel. (Order 1:25–26, ECF No. 1892). Specifically, A. Bundy claimed that NSDC told him: "[T]he next time Ammon, Ryan Bundy, or Ryan Payne were placed in segregation, they would not be allowed to meet with their lawyers." (*Id.* 1:28–2:1). Defendant's motion for joinder included argument that he would not be able to meet with standby counsel. (*Id.* 2:6–9). Defendant specifically asserted in his motion for joinder:

> [A]n inability for [Defendant] to access standby counsel occurred on March 17, 2017, when it was communicated to standby counsel while she was in the attorney interview room at NSDC that [Defendant] was in the administrative segregation area, and could not visit instant counsel without being handcuffed for the walk to the attorney interview room. It was further communicated to instant standby counsel from NSDC that [Defendant's] refusal to be handcuffed for the visit let [sic] to the visit not taking place.

(Mot. Joinder to Mot. for Hr'g 2:25–3:3, ECF No. 1745); (*see also* R. & R. 2:10–14). Defendant argued that under the test set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1987), "there exists no identifiable legitimate penological interest in requiring an inmate in administrative segregation to be handcuffed for a walk." (Mot. Joinder to Mot. for Hr'g 3:4–4:5); (*see also* R. & R. 2:14–19). A. Bundy and Defendant (collectively, the "defendants") protest being detained and assert that the NSDC policies are unconstitutional. (R. & R. 4:15–17). To better consider these claims, Judge Leen "requested a report from the [United States Marshal Service ('USMS')] regarding these defendants' complaints about access to counsel." (*Id.* 3:14–15). The USMS Report indicated that the defendants "were not taken to meet with their lawyers because they refused to comply with NSDC rules that apply to all detainees," specifically

putting on handcuffs for movement to the attorney visitation room, and the "defendants have access to their lawyers on the same basis as other inmates." (*Id.* 4:20–22, 6:21).

In her analysis, Judge Leen first noted, "Ordinarily, a civil rights action is the appropriate remedy for an inmate to challenge the conditions of his confinement on constitutional grounds." (*Id.* 4:23–24). However, she determined that it was necessary to examine the defendants' opportunity to consult with counsel under 18 U.S.C. § 3142(i)(3) because the defendants are detained. (*Id.* 4:26–28). She then found that the defendants failed to provide an "offer of proof or affidavit establishing a concrete claim that anything other than the defendants' refusal to comply with NSDC procedures is preventing access to their counsel," and therefore, "the court will not conduct an ex parte hearing." (*Id.* 6:18–20). Judge Leen further explained: "[I]t seems clear that these defendants have made decisions not to meet with their counsel if required to comply with facility rules that they be transported to and from attorney visits in handcuffs. If they choose to visit with their attorneys, they may do so." (*Id.* 6:24–26).

Defendant filed the instant objection, arguing that Judge Leen "erroneously assumed without deciding the complained of conduct was a constitutional policy rather than punishment." (Obj. 10:21–23, ECF No. 1946). He further asserts that of Judge Leen's consideration and reliance on the USMS Report was clearly erroneous. (*Id.* 10:3–5, 14:19–15:3, 15:21–22). Lastly, Defendant contends that Judge Leen "failed to identify . . . [a] legal standard or analysis to establish the Court's power to deny defendants an Ex Parte hearing." (*Id.* 15:5–8).[3]

---

[3] Defendant does not provide any legal support or case law stating that a magistrate judge may not deny a motion for hearing. To the contrary, there is a "well established" principle that "[d]istrict courts have inherent power to control their dockets." *United States v. W.R. Grace*, 526 F.3d 499, 509 (9th Cir. 2008) (quoting *Atchison, Topeka & Santa Fe Ry. Co. v. Hercules Inc.*, 146 F.3d 1071, 1074 (9th Cir. 1998) (alteration in original)). As such, the Court finds that Judge Leen had discretion to deny a motion for hearing on this matter that was properly referred to her pursuant to 28 U.S.C. § 636(b)(1)(A).

The Court finds that the proper avenue for challenging detention conditions is a civil rights action. *See Bivens v Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Indeed, Defendant appears cognizant of this method for relief, as he has filed such a case raising these same issues. (*See* Complaint, *Bundy v. United States*, Case No. 2:17-cv-1127-JAD-GWF (D. Nev. 2017), ECF No. 1).

Nevertheless, inasmuch as any detention-related claim might impact the defendants' ability to prepare for trial, the Court finds that Judge Leen properly inquired into the defendants' custodial situation regarding access to counsel. *See* 18 U.S.C. § 3142(i)(3). First, Defendant has elected to invoke his right to self-representation.[4] (*See* ECF Nos. 244, 285). "[A] defendant who waives his right to counsel does not have a right to advisory counsel." *United States v. Moreland*, 622 F.3d 1147, 1155 (9th Cir. 2010) (citing *United States v. Salemo*, 81 F.3d 1453, 1460 (9th Cir. 1996); *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994)). As such, there can be no Sixth Amendment access to counsel violation for a defendant who has chosen self-representation. *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) ("[A] defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"); *United States v. Flewitt*, 874 F.2d 669, 674–75 (9th Cir. 1989). Therefore, Defendant had no right to an ex parte hearing regarding his access to standby counsel.

Further, even if appointment of standby counsel to Defendant somehow conferred a right to access standby counsel despite his pro se status, Defendant still fails to demonstrate that the

---

[4] Upon allowing Defendant to represent himself after a *Faretta* canvass, the Court also appointed standby counsel for him. (*See* ECF No. 285). For clarification, the Ninth Circuit has distinguished the roles of standby and advisory counsel: "Advisory counsel is generally used to describe the situation when a pro se defendant is given technical assistance by an attorney in the courtroom, but the attorney does not participate in the actual conduct of the trial." *Locks v. Sumner*, 703 F.2d 403, 407 (9th Cir. 1983). "'Standby' counsel refers to the situation where a pro se defendant is given the assistance of advisory counsel who may take over the defense if for some reason the defendant becomes unable to continue." *Id.* at n.3. As such, "standby counsel" is basically one form of "advisory counsel." *See Frantz v. Hazey*, 533 F.3d 724, 728 (9th Cir. 2008).

jail safety regulations were not reasonably related to a legitimate penological interest. *See, e.g.*, *Casey v. Lewis*, 4 F.3d 1516, 1520 (9th Cir. 1993) (explaining that under *Ching v. Lewis*, 895 F.2d 608, 610 (9th Cir. 1990), the right of access to the courts includes contact attorney visitation; however, pursuant to *Turner v. Safley*, 482 U.S. 78, 89 (1987), this right may be limited if such limitation is reasonably related to legitimate penological interests).[5] Therefore, Judge Leen did not clearly err in finding that Defendant's refusal to comply with the NSDC handcuff policy to meet with standby counsel was his choice, not the NSDC preventing him from access to standby counsel.

Accordingly, the Court finds that Judge Leen's Order denying such a hearing was neither clearly erroneous nor contrary to law, and the Court overrules Defendant's objection.

**IT IS HEREBY ORDERED** that Defendant's Objection (ECF No. 1946) is **OVERRULED**.

**DATED** this \_\_20\_\_ day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court

---

[5] In his original motion, Defendant acknowledged that "[t]he burden is on the inmate to show that the challenged regulation is unreasonable." (Mot. Joinder to Mot. for Hr'g 3:17). He stated that "if allowed to answer [he] will be able to demonstrate the unreasonableness of being handcuffed for a walk from his cell to the attorney interview room." (*Id.* 3:18–19). Defendant's motion then went through the four factors set forth in *Turner* in a conclusory manner, but he did not provide further information or evidence demonstrating why or how the handcuff policy is unreasonable. (*See id.* 3:20–4:5).