

**ryan-c: family of Bundy**
In care of postal address:
Post Office Suite 7447
Bunkerville, Nevada
Email: C4CFForall@gmail.com
Cell Phone: (435) 701-1013

Sui Juris

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

UNITED STATES AMERICA,
      Plaintiff

Vs.

RYAN C. BUNDY
      Defendant.

CASE No. 2:16-cr-00046-GMN-PAL-02

Judge: Gloria Navarro
Hearing: January 8, 2018
Courtroom – 7C

**Verified Declaration**
**(Affidavit)**
**ryan-c: family of Bundy**

Whereas, the public record is the highest form of evidence, i am hereby timely creating for the public record by this Verified Declaration, affidavit, within the Nevada Union State; and,

Your silence stands as consent, and tacit approval, for the declarations of facts and conclusions here being established as fact, as a law matter and this declaration, affidavit, absent rebuttal within seven days , will stand as final judgment in this matter; and,

Failure to rebut in a sworn affidavit form within seven days, item by item, establishes you are in agreement with the claims herein and are thusly lawfully estopped pursuant to: Carmine v. Bowen, 64 A. 932, 1906, "silence activates estoppel"; and,

The right to amend this document is reserved by author, who is the only party authorized to assert the right to make amendments to this document as necessary, and in order that the truth may be ascertained and these proceedings are justly determined; and,

Should any man or woman possess information that will controvert and overcome this Declaration with specificity, please advise in writing by Verified Declaration in form of Affidavit, point by point, under penalty of perjury, within seven days from the filing of this document; and thereby, provide me with your timely rebuttal proving with particularity by stating all requisite actual evidentiary fact and all requisite actual law, and at no time in reliance on mere presumptive facts and personal conclusions, that this Verified Declaration, affidavit, is substantially and materially false sufficiently for changing materially my declaration; and,

Declarant, competent by stating the matters set forth herein, does herewith declare, state and say that this Declaration is issued with sincere intent in truth, the contents are true, correct, complete, and certain, admissible as evidence, reasonable, not misleading, and by the best knowledge of the undersigned.

1.  The Bundy family and their ancestors continues to ranch and has ranched, and on the Bunkerville/Gold Butte Range since 1877; and,

2.  The Cliven Bundy family possess prescriptive rights to the beneficial use of the grazing forage as well as vested rights to the water(s) in the Bunkerville/Gold Range since 1877 uninterrupted; and,

3.  Cliven D Bundy owns Vested Rights for Stock Watering purposes on the Bunkerville/Gold Butte Range ownership is recorded with "the State of Nevada, Division of Water Resource"; and,

4.  These Vested Rights belonging to Patriarch Cliven D Bundy are memorialized in/on the public record with "the State of Nevada, Division of Water Resources"; evidence of Appropriation of Vested Stock Water Rights Numbers see: V08974, V08975, V08976, V08977, V08978, V08979, V08980, V08981, V08982, V08983, V08984; and,

5.  All agencies, including but not limited to the Bureau of BLM management, are aware of the eleven (11) Vested Rights for Stock Watering purposes on the Bunkerville/Gold Butte Range belonging to Patriarch Cliven D Bundy as on record with "the State of Nevada, Division of Water Resources" by and through constructive notice; notice to the principal is notice to the agent and notice to the agent is notice to the principal; and,

ryan-c: family of Bundy          Verified Declaration (affidavit)                                    2

6.  I was obstructed, by Judge Gloria Navarro, from commenting, and objecting, at the hearing of December 20, 2017, as to the propriety of a mistrial versus a dismissal with prejudice in accordance with FRCrP 26.3 when I attempted to do so; and,

7.  The Court has declared, on the record, seven and counting Brady and Giglio violations that caused prejudice to the defendants in this matter; and,

8.  I have been and continue to be prejudiced by the actions of AUSA Steven W. Myhre and others; and,

9.  Said prejudices violate, and are contrary to, my Constitutional protections including, but not limited to, the 5th, 6th, and 14th Amendments; and,

10. The actions of the Court, the United States of America, Steven W. Myhre and his co-conspirators, are **causing Me to suffer a tort**; and,

11. I have been denied witnesses, evidence and testimony to conduct a proper defense in this matter including, but not limited to My detention hearing dated January 31, 2017; and,

12. Steven W. Myhre and his co-conspirators knowingly and willfully concealed the fact that Defendant GREGORY P. BURLESON is a government informant; and,

13. Defendant GREGORY P. BURLESON was a suspected plant, for the purpose of spying and breaching trust, into Constitutionally protected confidential defense counsel meetings while undercover as an informant to the government; and,

14. A complaint is a statement of facts made by a natural person under oath, having suffered a personal injury; and,

15. Thus, no complaint, meeting the necessary elements of a proper complaint (FRCrP Rule 3), exists against any Defendant in this case; including CLIVEN D BUNDY with FBI Special Agent Joel P.

Willis (not a natural person having suffered a personal injury) as the complainant who is not a victim having no standing (Giordenello v. U.S.[1]); and

16. Specifically, no complaint, whatsoever, against RYAN C BUNDY, proper or improper, exists or has been filed in this case, (see Exhibit 1) therefore no charges can be prosecuted against RYAN C BUNDY; and,

17. The role and function of the Grand Jury is to investigate into the facts of a proper complaint, then with the authority they possess only the Grand Jury can decide whether or not probable cause exists sufficient to issue a criminal indictment based upon that complaint; and

18. Steven W. Myhre and Nadia J. Ahmed and others usurped the role and function of the Grand Jury by wearing multiple hats, (1) complainant (2) investigator (3) attorney for the government (4) prosecutor, by participating in, or leading, the investigation, drafting the Indictment; and,

19. Steven W. Myhre and Nadia J. Ahmed and others conspired to and did in fact present fraudulent and deceptive information to the Grand Jury in order to obtain their desired indictment on the Defendants while they possessed evidence verifying their presentments to be untrue; for example but not limited to:

      (a.) Snipers and video surveillance on the hills around the Bundy home;

      (b.) Use of snipers at the arrest of Dave Bundy on 4/06/2014;

      (c.) That excessive force by BLM was used to batter and injure Margaret Houston on 4/9/2014 causing American People to gather in protest;

---

[1] With no indictment and on his own complaint, a federal officer obtained a warrant for petitioner's arrest, but obtained no search warrant. His complaint was not based on his personal knowledge, did not indicate the source of his belief that petitioner had committed a crime and set forth no other sufficient basis for a finding of probable cause. With this warrant, he arrested petitioner and seized narcotics in his possession. The arrest and seizure were not challenged at petitioner's arraignment, but a motion to suppress the use of the narcotics in evidence was made and denied before his trial. They were admitted in evidence at his trial in a federal district court and he was convicted. Held: The arrest and seizure were illegal, the narcotics should not have been admitted in evidence, and petitioner's conviction must be set aside. Pp. 481-488.
1. By waiving preliminary examination before the Commissioner, petitioner did not surrender his right to contest in court the validity of the warrant on the grounds here asserted. Pp. 483-484.
2. Under Rules 3 and 4 of the Federal Rules of Criminal Procedure, read in the light of the Fourth Amendment, probable cause was not shown by the complaint and the warrant for arrest was issued illegally. Pp. 484-487.
3. Having relied entirely in the courts below on the validity of the warrant, the Government cannot contend in this Court that the arrest was justified apart from the warrant, because the arresting officer had probable cause to believe that petitioner had committed a felony; nor should the case be sent back to the District Court for a special hearing on the issue of probable cause. Pp. 487-488.   241 F.2d 575, reversed.
GIORDENELLO v. UNITED STATES, 357 U.S. 480 (1958)

       (d.) That I, ryan-c: was with LVMPD deputy Mark McEwen and Clark county Under Sheriff Joseph Lombardo during the protest 4/12/2014, and in no way leading a mass armed assault as alleged in the fraudulent Indictment, and others; (see transcript of Detention Hearing; January 31, 2017 pages 189-190); and,

20. Steven W. Myhre and Nadia J. Ahmed knowingly and willfully manipulated testimony of witnesses in front of the Grand Jury by formulating lengthy leading questions for the witnesses to simply answer "yes" or "no" to, which allowed them to testifying while creating an illusion that they were not; Steven W. Myhre and Nadia J. Ahmed where, in fact, the witnesses offering testimony to the Grand Jury instead of the actual witness being examined; and,

21. Daniel G. Bogden, United States Attorney, Terry M. Petrie, Trial Attorney, and Nadia J. Ahmed, Assistant United States Attorney were government attorneys in civil cases U.S.A. Bundy, 2:98-cv-00531-LRH-VCF, knowingly creating a conflict of interest; and

22. Ianacia S. Moreno, Assistant Attorney General, Thomas K. Snodgrass, Senior Attorney United States Department of Justice, Environment and Natural Resources Division, Daniel G. Bogden, United States Attorney, and Nadia Ahmed were attorneys in the civil case UNITED STATES OF AMERICA v. CLIVEN BUNDY, 2:12-cv-00804-LDG-GWF filed May 14, 2012; and

23. Furthermore, Ianacia S. Moreno, Assistant Attorney General, Thomas K. Snodgrass, Senior Attorney United States Department of Justice, Environment and Natural Resources Division, Daniel G. Bogden, United States Attorney, and Nadia Ahmed were the only complainants in UNITED STATES OF AMERICA v. CLIVEN BUNDY, 2:12-cv-00804-LDG-GWF filed May 14, 2012, but are not victims and received no harm therefor have no standing; and,

24. Additionally, Ianacia S. Moreno, Assistant Attorney, Terry M. Petrie, Attorney, Stephen R Terrell, Attorney, United States Department of Justice, Environmental and Natural Resources Division, Natural Resources Section, Daniel G. Bogden, United States Attorney and Nahdia Ahmed Special Assistant United States Attorney, submitted Document #19-2 on December 21, 2012, a declaration of Mary Jo Rugwell, Associate State Director for the Bureau of Land Management (BLM) Wyoming State Office.  UNITED STATES of AMERICA v. CLIVEN BUNDY, 2:12-cv-00804-LDG-GWF filed May 14, 2012; This is an obvious direct conflict of interest for Attorneys: Petrie, Bogden, and Ahmed. Petrie was also in conflict as a witness in all three Nevada Criminal Trials; and,

25. The Indictment contains no factual basis to establish the actual location of the events alleged, and the Government Prosecutor failed to disclose and establish territorial jurisdiction "Locus Delicti", the actual site of alleged criminal activity; the actual location of the allegations took place upon Nevada State Department of Transportation Land within jurisdiction of Clark county, not within a federal territory; federal enclave; federal district; possession of the United States; or "national park" *(NPS Director's Order 9: Law Enforcement Program 2.2)*; and,

26. In the criminal case of USA v. CLIVEN BUNDY ET AL, the government failed to disclose Mary Jo Rugwells' letter, see affidavit Exhibit 2, to "The State of Nevada Division of Resources"; and,

27. Furthermore, on April 14, 2014 Bureau of Land Management Special Agent Marl Brunk was interviewed by FBI Michael D. Pratt at the Marriot Convention Center hotel in Las Vegas, NV. (File No. 266T-LV-4739895-302) wherein Brunk stated that he acted as a spotter for a BLM sniper. Later on January 30, 2015 Agent Brunk was again interviewed by Special Agent Joel P. Willis at the District Courthouse, 333 South Las Vegas Blvd, Las Vegas, Nevada. Also present during the interview were Assistant United States Attorneys Dan Schiess, Nadia Ahmed and Roger Yang. The purpose of this interview was to collect clarifying information from Brunk. see affidavit exhibit 3, FBI 302 report, entry date 02/24/2015. (File No. 100T-LV-4739895-302) wherein Brunk's statement was changed that he had never acted as a spotter for a BLM Sniper! Testimony was changed! Exhibit 3

28. Judge Peggy Leen unlawfully removed 15 affidavits and other documents from the docket that were already on the record unanswered and undisputed, therefore FACTS in evidence in this case; and,

29. BLM SAC Dan LOVE [TESTIMONY OF DANIEL P. LOVE TAKEN OCTOBER 14, 2015 Transcript] (pg 14) Dan Love: " -- the likelihood of conflict of interference was high. The propensity for a violent encounter was low to nonexistent. There was nothing to suggest that there would be a violent encounter, no active intelligence beyond what we believed that we would see, you know, kind of the sagebrush rebellion tactics, people blockading vehicles, generally interfering, protesting, trying to impede. Those were the issues that were to the forefront of the threat assessment that was conducted in 2014." (Pg 15) "Not only was there not a threat, there was in intelligence to suggest that there was a likelihood of that, as well. (Pg 28) "No, there has not been a change in threat." (Pg 29) "There's no change, there's no information from the FBI to suggest that there was an organized group or individual or that there's a specific threat of violence or harm to the

government,---at large or any specific employee." Statements also on pages 45,46,55,57,58,65 "the overall threat picture has not changed." On page 45 Dan Love references the BAU (Behavioral Analysis Unit at Quantico with the FBI). Myhre asks, "So they would provide you some assessment based on their look at the personality types involved in this? Dan: Correct. They're looking at the behavioral traits, patterns, you know, propensity, history, likelihood going forward, status in the community". Etc. This report has never been found to be in Discovery.

<p style="text-align:center">**********</p>

**Steven W. Myhre has and will continue to deceive the court as he deceived the Grand Jury; and I, ryan-c:, am in full agreement with the following on the record testimony of the Court:**

30. At all times throughout this persecution, I was fully aware, AND this Court so finds, at Page 9 of 36, line 4 "...this information potentially rebuts the allegations of the defendants' deceit which is **repeated in the superseding indictment numerous times**..."; and,

31. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 9 of 36, line 16 "the court also finds that the disclosure was **willful**"; and,

32. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 9 of 36, line 20 "it was a **willful** disclosure/suppression of this potentially exculpatory, favorable, and material information..."; and,

33. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 10 of 36, line 3 "the U.S. Attorney's Office **was aware** of the camera"; and,

34. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 10 of 36, line 10 "the Government **falsely represented** that the camera view of the Bundy home was incidental and not intentional"; and,

35. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 10 of 36, lines 12-13 Government responded to a legitimate discovery request as a "a fantastic fishing expedition"; and,

36. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 9 of 36, lines 14-15 "the court does find that this **suppression has undermined the confidence** in the outcome of the case"; and,

37. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 12 of 36, line 24-25 "regarding BLM individuals wearing tactical gear, not plain clothes, carrying AR-15s assigned to the LPOP...potentially rebut the **indictments allegation of overt acts, including false pretextual misrepresentations** that the Government claims the Defense made about snipers, Government snipers, isolating the Bundy family and defendants using deceit and deception to normally recruit gunman."; and,

38. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 12 of 36, lines 10-12 "Court does find that the suppression was a **willful failure to disclose**... They were aware of the evidence and **chose not to disclose** it."; and,

39. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 13 of 36, line 20 "The court does find that the suppression [snipers] was **willful**. It was a failure to disclose the information **knowing** that this information existed..."; and,

40. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 14 of 36, line 5 "was **aware** of the evidence, **chose not to disclose it**."; and,

41. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 14 of 36, lines 17-19 "This coupled with the Government's strong insistence <u>in prior trials</u> that **no snipers existed** justifies **the Court's conclusion that the non-disclosure was willful**."; and,

42. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 15 of 36, lines 21-22 "appear to have been withheld willfully..."; and,

43. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 17 of 36, lines 8-9 "..., that **no alternative information** was available for him **to discover the truth** directly **from the Government**."; and,

44. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 17 of 36, lines 21-22 "The court does find that there was a **willful failure to disclose** the information."; and,

45. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 19 of 36, lines 15-18 "The court also finds that this information was **willfully suppressed**, despite representations by the Government that this report was an urban legend and a shiny object to distract the court."; and,

46. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 21 of 36, line 2 "There still seems to be outstanding discovery."; and,

47. At all times throughout this persecution, I was fully aware, AND this Court so finds, at Page 21 of 36, lines 9-10 "...that information does not appear to be provided."; and,

48. At all times throughout this persecution, I was fully aware, AND this Court so finds, Page 23 of 36, lines 17-18 "...the Brady violations...are **constitutional due process violations**..."; and,

Further declarant sayeth naught.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 29, 2017.

ryan-c: family of Bundy
In care of postal address:
Post Office Suite 7447
Bunkerville, Nevada
Email: C4CFForall@gmail.com
Cell Phone: (435) 701-1013

**"Notary Public", as "Jurat Certificate"**

Clark County

Nevada State

SUBSCRIBED AND SWORN TO BEFORE ME on December _____, 2017 at Las Vegas Nevada.

x_____ Public Notary in and for Nevada State

_____ Printed Name

My commission ends on _____        Seal

ryan-c: family of Bundy          Verified Declaration (affidavit)          9

# EXHIBIT

# 1

# United States District Court
## District of Nevada (Las Vegas)
## CRIMINAL DOCKET FOR CASE #: 2:16-cr-00046-GMN-PAL-2

Case title: USA v. Bundy et al                    Date Filed: 02/17/2016

Assigned to: Chief Judge Gloria M.
Navarro
Referred to: Magistrate Judge Peggy A.
Leen

Appeals court case number: 17-10409 9th
Circuit Court of Appeals

**Defendant (2)**

**Ryan C. Bundy**                    represented by **Ryan C. Bundy**
79400065
Nevada Southern Detention Center
2190 East Mesquite Ave.
Pahrump, NV 89060
PRO SE

**Maysoun Fletcher**
The Fletcher Firm, P.C.
5510 S. Fort Apache, Suite 5
Las Vegas, NV 89148
(702) 835-1542
Email: maf@fletcherfirmlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Angela H. Dows**
Premier Legal Group
1333 North Buffalo Drive
Suite 210
Las Vegas, NV 89128
702-794-4411
Fax: 702-794-4421
Email: adows@premierlegalgroup.com
*TERMINATED: 10/06/2017*
*Designation: CJA Appointment*

**Thomas A. Ericsson**
Oronoz, Ericsson & Gaffney LLC
1050 Indigo Drive, Suite 120

Las Vegas, NV 89143
(702) 878-2889
Fax: (702) 522-1542
Email: tom@oronozlawyers.com
*TERMINATED: 10/11/2017*
*Designation: CJA Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 18:371 - Conspiracy to Commit an Offense Against the United States (1) | |
| 18:371 - Conspiracy to Commit an Offense Against the United States (1s) | |
| 18:372 - Conspiracy to Impede or Injure a Federal Officer (2) | |
| 18:372 - Conspiracy to Impede or Injure a Federal Officer (2s) | |
| 18:924(c)(1)(A)(ii) and 2 - Use and Carry of a Firearm in Relation to a Crime of Violence and Aiding & Abetting (3) | |
| 18:924(c) and 18:2 - Use and Carry of a Firearm in Relation to a Crime of Violence and Aiding & Abetting (3s) | Dismissed 2/2/2017 |
| 18:111(a)(1) and (b), 1114, and 2 - Assault on a Federal Officer and Aiding & Abetting (4-5) | |
| 18:111(a)(1), (b) and 18:2 - Assault on a Federal Office and Aiding & Abetting (4s) | |
| 18:111(a)(1), (b) and 18:2 - Assault on a Federal Officer and Aiding & Abetting (5s) | |
| 18:924(c)(1)(A)(ii) and 2 - Use and Carry of a Firearm in Relation to a Crime of Violence and Aiding & Abetting (6) | |
| 18:924(c) and 18:2 - Use and Carry of a Firearm in Relation to a Crime of Violence and Aiding & Abetting (6s) | |

18:115(a)(1)(B) and 2 - Threatening a
Federal Law Enforcement Officer and
Aiding & Abetting
(7-8)

18:115(a)(1)(B) and 18:2 - Threatening a
Federal Law Enforcement Officer and
Aiding & Abetting
(7s-8s)

18:924(c) and 2 - Use and Carry of a
Firearm in Relation to a Crime of Violence
and Aiding & Abetting
(9)

18:924(c) and 18:2 - Use and Carry of a
Firearm in Relation to a Crime of Violence
and Aiding & Abetting
(9s)

18:1503 and 2 - Obstruction of the Due
Administration of Justice and Aiding &
Abetting
(10-12)

18:1503 and 18:2 - Obstruction of the Due
Administration of Justice and Aiding &
Abetting
(10s-12s)

18:1951(a) and 2 - Interference with
Interstate Commerce by Extortion and
Aiding & Abetting
(13-14)

18:1951 and 18:2 - Interference with
Interstate Commerce by Extortion and
Aiding & Abetting
(13s-14s)

18:924(c)(1)(A)(ii) and 2 - Use and Carry
of a Firearm in Relation to a Crime of
Violence and Aiding & Abetting
(15)

18:924(c) and 18:2 - Use and Carry of a
Firearm in Relation to a Crime of Violence
and Aiding & Abetting
(15s)

18:1952(a)(2) and 2 - Interstate Travel in
Aid of Extortion and Aiding & Abetting
(16)

18:1952 and 18:2 - Interstate Travel in Aid
of Extortion and Aiding & Abetting
(16s)

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Interested Party**

**Russell M. Aoki**                            represented by    **Russell M Aoki**
                                                                 Aoki Law PLLC
                                                                 Coordinating Discovery Attorney
                                                                 1200 5th Ave., Ste. 750
                                                                 Seattle, WA 98101
                                                                 206-624-1900
                                                                 Email: russ@aokilaw.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*
                                                                 *Designation: CJA Appointment*

**Interested Party**

**Roger I. Roots**

**Intervenor**

**Las Vegas Review-Journal**                   represented by    **Alina M Shell**
                                                                 McLetchie Shell LLC
                                                                 701 East Bridger Ave., Suite 520
                                                                 Las Vegas, NV 89101
                                                                 702-728-5300
                                                                 Fax: 702-425-8220
                                                                 Email: alina@nvlitigation.com
                                                                 *LEAD ATTORNEY*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Margaret A McLetchie**
                                                                 McLetchie Shell LLC
                                                                 701 East Bridger Ave., Suite 520

# EXHIBIT

# 2



# United States Department of the Interior

## BUREAU OF LAND MANAGEMENT
Las Vegas Field Office
4701 North Torrey Pines Dr
Las Vegas NV 89130
www.nv.blm.gov

2000 OCT -6 FII 1:43

In Reply Refer to:
7250 (NV-052)

SEP 3 0 2008

Tracy Taylor
Nevada State Engineer
Division of Water Resources
901 South Stewart Street
Suite 2002
Carson City, NV 89701

Dear Mr. Taylor,

It has come to the attention of the Bureau of Land Management (BLM) that Mr. Cliven Bundy of Bunkerville, Nevada has vested water rights on BLM land without a use authorization. The Nevada Division of Water Resources Water Rights Database lists a total of 11 water rights to Mr. Bundy, all of which have a type of use listed as stockwater use. Nine of these water rights exist on BLM land in the Gold Butte Area of Critical Environmental Concern (ACEC); the other two are located on privately owned in-holdings within or near the Gold Butte ACEC. A list of the water rights of concern is below:

| Water Right Number | Source | Land Ownership |
|---|---|---|
| V08974 | Government Spring | BLM |
| V08976 | Great Eastern Mine | BLM |
| V08978 | Juanita Spring | Private |
| V08979 | Dud Spring | BLM |
| V08980 | Key West South Well | Private |
| V08981 | Nickel Creek | BLM |
| V08984 | North Key West Spring | BLM |
| V08977 | Red Rock Springs | BLM |
| V08982 | Seeps Springs | BLM |
| V08983 | Hartman Tank | BLM |

The BLM is asking the State Engineer to review the status of the water rights owned by Mr. Bundy on BLM land and determine whether or not they are still valid based on the lack of authorization to graze livestock on the public range. (NRS 533.040 and NRS 533.503)

In 1993 Mr. Bundy was sent the first Trespass Notice and Order to remove livestock for continued grazing of livestock within the Bunkerville Allotment without a grazing authorization. Due to the lack of acknowledgment on the part of Mr. Bundy to remediate the situation, in 1994,

his grazing authorization for the Bunkerville Allotment was cancelled. In 1998, the Record of Decision for the Las Vegas Resource Management Plan (RMP) and Final Environmental Impact Statement, designated the Bunkerville Allotment as part of the Gold Butte ACEC for the recovery of the desert tortoise. With this designation, the Gold Butte ACEC was closed to livestock grazing activities.

We appreciate your attention to this matter. If you have any questions regarding this matter, please contact the project manager Sarah Peterson, BLM Hydrologist and Acting Assistant Field Manger for Recreation and Renewable Resources, at 702-515-5154.

Sincerely,

Mary Jo Rugwell
Field Manager

cc:  Sarah Peterson, BLM, Hydrologist
     Everett Bartz, BLM, Range Specialist
     Gayle Marrs-Smith, BLM, Gold Butte Project Manager

JIM GIBBONS
*Governor*

ALLEN BIAGGI
*Director*

TRACY TAYLOR, P.E.
*State Engineer*

**STATE OF NEVADA**



**DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES**
# DIVISION OF WATER RESOURCES
901 South Stewart Street, Suite 2002
Carson City, Nevada 89701-5250
(775) 684-2800 • Fax (775) 684-2811
(800) 992-0900
(In Nevada Only)
http://water.nv.gov

October 10, 2008

Mary Jo Rugwell, Field Manager
Las Vegas Field Office
United States Department of the Interior
Bureau of Land Management
4701 North Torrey Pines Drive
Las Vegas, Nevada 89130

Re: Proof of Appropriation Nos. V08974, V08976 through V08984.

Ms. Rugwell:

I am in receipt of your letter, dated September 30, 2008, regarding the status of Proof of Appropriation Nos. V08974, V08976, V08977, V08978, V08979, V08980, V08981, V08982, V08983 and V08984. These claims were filed on October 23, 1997, by Keith Nay and Cliven D. Bundy claiming prestatutory, prior to 1905, stock water use from Government Spring, Great Eastern Mine, Red Rock Springs, Juanita Spring, Dud Spring, Key West South Well, Nickel Creek, Seeps Springs, Hartman Tank and North Key West Spring, respectively. In your letter you request a review of the status of the aforementioned claims.

No decision regarding the validity of these claims has been made by the Office of the State Engineer. In order to determine if an applicant is an authorized range user on public land the person or any other entity would have to submit an Application to Appropriate the Public Waters of the State of Nevada. Under the statutory process this office has the ability to determine if the applicant has the ability to place the water to beneficial use. It is our policy to send letters to all federal agencies regarding the applicant's right to graze their livestock on public lands administered by your agency. NRS 533.503 states:

1. The State Engineer shall not issue a permit to appropriate water for the purpose of watering livestock unless:

Mary Jo Rugwell, Field Manager
October 10, 2008
Re: V08974, V08974 through V08984
Page 2 of 2

    (a) The applicant for the permit is legally entitled to place the livestock on the lands for which the permit is sought, and:
    (1) Owns, leases or otherwise possesses a legal or proprietary interest in the livestock on or to be placed on the lands for which the permit is sought; or
    (2) Has received from a person described in subparagraph (1), authorization to have physical custody of the livestock on or to be placed on the lands for which the permit is sought, and authorization to care for, control and maintain such livestock.
    Again, this requirement is part of the statutory permitting process and does not pertain to Proofs.
    These Proofs of Appropriation, also referred to as "Claims", state that water from these sources was placed to beneficial use "prior to 1890" for watering of 75 head of livestock, combination of cattle and horses. It is the policy of the State Engineer's Office that any claim of vested right stands on its own merits until such time as the rights are challenged and eventually adjudicated under NRS Chapter 533, §533.090 through 533.320, inclusive. The filing of a claim does not confirm ownership of the water, it's source or the land on which it resides.
    The adjudication process is normally began via a petition to the State Engineer by one or more of the claimants on a specific water source, stream system, groundwater source or a hydrographic basin. The State Engineer may conduct the minimum of a field investigation and research of our records to determine if an adjudication is warranted. In the scenario set forth in your letter, there does not appear to be any other entity competing for the use of water from these springs. It is stated that Mr. Bundy was found to be in trespass in 1993 and "his grazing authorization for the Bunkerville Allotment was cancelled" at a later date. Even though Mr. Bundy's grazing permit has been cancelled, there is no other evidence that proves that a vested right to the use of these sources has or has not been established by historical use prior to 1905.
    In summation this office does not have the statutory ability to reject any of the Bundy claims based on the current disposition of his grazing permit.

               Sincerely,

               Steve Walmsley
               Staff Engineer

SW/ag
Cc: Sarah Peterson (Same Address)
Keith Nay and Cliven D. Bundy

BRIAN SANDOVAL
*Governor*

**STATE OF NEVADA**

LEO DROZDOFF
*Director*

JASON KING, P.E.
*State Engineer*



DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES
# DIVISION OF WATER RESOURCES
901 South Stewart Street, Suite 2002
Carson City, Nevada 89701-5250
(775) 684-2800 • Fax (775) 684-2811
http://water.nv.gov
October 1, 2014

Michael M. McGreer
533 Rolling Hills Drive
Mesquite, Nevada 89027

> Re: Request to Investigate an Alleged Violation; AV 111; Alleged Unauthorized Stockwater
> Use Under Claims of Vested Right V08974 through V08984

Dear Mr. McGreer,

This letter is in response to your Request to Investigate an Alleged Violation (RIAV) received by this office on September 26, 2014, alleging that Cliven Bundy of Bunkerville, Nevada, has used and continues to use water in violation of the terms or conditions of Claims of Vested Right V08974 through V08984 and in violation of Nevada Revised Statute (NRS) § 533.503.

As was explained in the September 2, 2014 letter from this office, Proofs of Appropriation were filed with this office for Claims of Vested Right V08974 through V08984, by Keith Nay and Cliven D. Bundy. These proofs state that water was placed to beneficial use prior to 1890 for watering cattle and horses, and claim pre-statutory stock water use from several surface and underground sources in Virgin River Valley and Gold Butte Area Hydrographic Basins. The State Engineer has made no decision regarding the validity of the claims as this decision must be made through the adjudication process defined in NRS §§ 533.090 through 533.320. As explained in the September 2, 2014 letter, although these claims have not been adjudicated, the State Engineer has the responsibility under NRS § 533.085 to protect pre-statutory vested water rights, even absent a final decree in a statutory adjudication.

Your RIAV also alleges that Mr. Bundy is in violation of NRS § 533.503 because Mr. Bundy is not legally entitled to place livestock on the lands for which a permit is being sought. While NRS § 533.503 defines restrictions incumbent on the State Engineer in the issuance of a permit or certificate to appropriate water for watering livestock, this statute does not apply in the case of a claim of vested right. In fact NRS § 533.503 (3) states specifically:

> *This section must not be construed to impair the vested right of any person to the use of water for the purpose of watering livestock or to prevent any transfer of ownership of a water right for the purpose of watering livestock.*

Michael M. McGreer
Request to Investigate an Alleged Violation; AV 111; Alleged Unauthorized Stockwater Use Under
Claims of Vested Right V08974 through V08984
October 1, 2014
Page 2

The issue that you raise in your RIAV concerning the status of Mr. Bundy's claims of vested
right had also been raised with this office, by Mary Jo Rugwell, Field Manager of the U.S. Bureau of
Land Management, in a letter to the State Engineer dated September 30, 2008. I am including a copy
of both Ms. Rugwell's request and an October 10, 2008 response letter from this office for your
information. Our response letter provides additional explanation regarding the differences between
the statutory permitting process and the adjudication process for pre-statutory rights. As was
concluded in the response letter, this office does not have the statutory ability to reject any of Mr.
Bundy's claims based on the disposition of his grazing permit.

Thank you for your awareness and concern for the water resources of the Virgin River Valley
and Gold Butte Area Hydrographic Basins. If you have any questions, please do not hesitate to
contact me directly at (775) 684-2884.

Sincerely,

Kim A. Davis, P.E.
Water Planning Engineer

KAD/sw
Enclosures
cc:     Southern Nevada Branch Office, via E-mail
        Jason King, P.E. via E-mail
        Eric Schadeck, via E-mail
        John Guillory, via E-mail

**BRIAN SANDOVAL**
*Governor*

**STATE OF NEVADA**



**LEO DROZDOFF**
*Director*

**JASON KING, P.E.**
*State Engineer*

**DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES**
# DIVISION OF WATER RESOURCES
901 South Stewart Street, Suite 2002
Carson City, Nevada 89701-5250
(775) 684-2800 • Fax (775) 684-2811
http://water.nv.gov
March 17, 2016

Michael M McGreer
533 Rolling Hills Dr.
Mesquite, Nevada 89027

Re:    Proof of Appropriation Nos. V-08974 through V-08984.

Dear Mr. McGreer:

I offer the following response to the questions raised in your letter of February 21, 2016. Yes, there was a phone call with VVWD in regard to the issue. I was asked whether the State Engineer's office is pursuing the adjudication of the water sources subject to the above mentioned vested claims. I responded that we are not currently conducting an adjudication of Mr. Bundy's vested claims, and furthermore, our office is moving away from conducting source specific adjudications in favor of more comprehensive, basin-wide, surface and groundwater adjudications. There are numerous advantages to this strategy, including but not limited to, the application of the McCarran Amendment and efficient use of limited resources. Currently, there are approximately 48 pending adjudications, including petitions for adjudication, at various stages of completion. These adjudications were prioritized and the top 16 are considered active adjudications with the full resources of our adjudication section being applied. Adjudications are a complex area of water law, extremely litigious, and can take years, sometimes decades, to complete. I believe I also communicated that even if we did decide to perform a source specific adjudication, Mr. Bundy's claims would not be our top priority.

Finally, I'm not sure what point you're trying to make with your last question. Feel free to call or email me with clarification. I can be reached at 775 684-2861 and my email address is jking@water.nv.gov.

Sincerely,

Jason King, P.E.
State Engineer

21, February 2016

Department of Conservation and Natural Resources
Division of Water Resources
901 South Stewart Street, Suite 2002
Carson City, Nevada 89071-520

Re: An alleged decision by the State Water Engineer on vested water rights.

In September 2008, Mary Jo Rugwell Filed Manager, Bureau of Land Management (BLM) sent a letter to Tracy Taylor, Nevada State Engineer, Divison of Water Resources. She asked the State Engineer to review the status of 11 water rights vested to Cliven Bundy, Bunkerville, NV. to water illegally grazing cattle. In response, Steve Walmsley, Staff Engineer said that "It is the policy of the Stat Engineer's Office that any claim of vested rights stands on its own merits until such rights are challenged and adjudicated under NRS 533, 533.090 through 533.320. He also said that "in the scenario outlined in your letter, there does not appear to be any other entity competing or the use of water from these springs.

In the summer of 2014, I filed a similar complaint with the State Engineers office. Kim Davis, P.E. Water Planning Engineer, responded. She referred to the Rugwell decision. She added that no decision regarding the Bundy claims has been made by the Office of the State Engineer. She said that such a determination must be made through the adjudication process by one or more of the claimants on a specific water source.

The Virgin Valley Water Board (VVWB), Mesquite, Nevada., of which I am a customer, also holds permits to some of the springs vested to Bundy. On February 16, 2016, I formally asked the VVWB to adjudicate Bundy's claims. I was told that their "staff" had contacted the State Engineer and he was not interested in adjudicating Bundy's claims.   I would like to know:

1.  Has any member of the Virgin Valley Water District Staff, a Virgin Valley Water Board Member or a member of the Bingham and Snow legal firm contacted the State Engineer regarding the adjudication of Bundy's vested rights, and

2.  Is it the position of the State Water Engineer not to adjudicate Bundy's vested rights, and

3.  Is it a normal practice to render policy decision through phone or personal contacts?

Sincerely,

Michael M. McGreer
533 Rolling Hills Drive
Mesquite, Nev. 89027
mmcgreer@msn.com
702 346 7573

# EXHIBIT

# 3

FD-302 (Rev. 5-8-10)



## FEDERAL BUREAU OF INVESTIGATION

Date of entry    04/14/2014

Mark Brunk, Bureau of Land Management Special Agent, office address Redacted
Redacted cellular telephone number Redacted was
interviewed at the Marriot Convention Center hotel in Las Vegas, NV. After
being advised of the identity of the interviewing Agent and the nature of
the interview, Mark Brunk provided the following information:

From April 2 to April 12, 2014, Brunk participated in Operation Gold Butte,
a BLM operation to remove cattle from land in Nevada owned by the Federal
government and managed by BLM. Brunk worked in nearly all areas of the
Operation, escorting civilian workers, and responding to all incidents.
Brunk was in plainclothes throughout the operation.

On April 6, 2014, Brunk observed the confrontation between law enforcement
officers and Ryan and Dave Bundy. Brunk was acting as a spotter/observer
for a BLM sniper.

On April 11, 2014, Brunk had an encounter with Jimmie FULLER, who
identified himself as "Jimmie" to Brunk. The encounter took place at the
are identified on Operation Gold Butte maps as Drop Point 1. Brunk was on
the side of the road in plainclothes with another BLM agent when FULLER
approached in his vehicle. FULLER asked if Brunk and his colleague were
LEOs, which they denied. FULLER continued on to the prohibited operational
area and returned shortly thereafter. FULLER commented that one of the
"Prohibited" signs had been removed, and Brunk and his colleague allowed
FULLER to believe that they had removed it.

On April 12, 2014, Brunk spent the morning escorting BLM doctors from the
operation site to their hotel rooms, and ultimately out of town. Brunk
arrived in the late morning at Point 1 (also known as Post 1) to provide
support to the growing standoff between BLM and the protesters. Brunk soon
moved to Point 2, where the protesters and BLM agents became engaged in a
standoff. Brunk stood next to his car with binoculars, scanning the crowd
for weapons and clothing descriptions. As he saw weapons, he would call
them out to the other agents on scene.

Brunk was shown photos of people at the scene and was able to identify
James Donald LARDY as being present at the standoff at the ICP. (While

| | | |
|---|---|---|
| Investigation on | 04/14/2014 | at Las Vegas, Nevada, United States (In Person) |
| File # | 266T-LV-4739895-302 | Date drafted 04/14/2014 |
| by | Michael D Pratt | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not
to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

266T-LV-4739895-302

Continuation of FD-302 of __Mark Brunk__ _____ , On __04/14/2014__ , Page __2 of 3__

scanning the crowd, Brunk was more interested in whether or not subjects
were armed, and providing descriptions to other agents on scene, and less
interested in facial recognition.) Brunk believes he saw Sheriff Denny
Peyman and Mark Matthews at the ICP, but was not 100% positive.

Brunk noticed that many of the protesters at the standoff were armed. He
saw many handguns, AR-15 and other assault-style rifles, hunting-style
rifles, and shotguns. Brunk noted that none of the people on horseback
appeared to be armed. Brunk saw limited use of anti-government tradecraft
on the part of the protesters, but did notice that some of the armed
individuals would behind women and children intentionally. Brunk believed
that they were using the women and children as human shields. A couple of
the protesters had gas masks in their possession. Several times armed
protesters would position themselves as if trying to "flank" the BLM or
gain the high ground. When he observed this activity, Brunk would indicate
to the protesters that he saw what they were doing, and they would usually
return to their original position.

Notable subjects that Brunk could not identify from the photos were a
sniper in position on the northbound lane of the I-15 (identified as Erik
Parker) and a spotter who assisted Parker. Brunk also saw a subject in
khaki pants and a plaid shirt, with a beard and armed with an AR-15 (or
similar) assault rifle. This individual had a German Shepherd. Brunk also
saw a subject in a blue shirt with a gas mask and an AR-15 (or similar)
assault rifle.

Brunk has received no threats over the telephone as yet, and he cancelled
his social media accounts prior to traveling to Nevada to avoid threats on
those platforms. Brunk did feel threatened nearly the whole time during the
operation. He did not feel in acute danger, however, until the standoff at
the ICP. He believes that if SAC Dan Love had not approached the protesters
during the standoff at the ICP, there would have been an exchange of
gunfire within minutes.

Other than the events surrounding the standoff at the ICP (specifically,
protesters blocking the I-15 and pointing their weapons at the BLM agents),
and the general nature of the entire operation, Brunk saw little criminal
activity other than Jimmie Fuller's incursion into the prohibited
operational area.

Brunk did not use audio or visual recording devices during the operation.

Brunk has some prior experience with militia investigations. While a
Sheriff's Deputy in Sequoyah, Oklahoma, he dealt with a local militia which


FD-302a (Rev. 05-08-10)

266T-LV-4739895-302

Continuation of FD-302 of  Mark Brunk                                    , On  04/14/2014 , Page  3 of 3

called itself the "Arm and Sword of the Lord." The militia had better
relationships with the Sheriff's department than other law enforcement
organizations in the area, especially federal law enforcement.

GB.019716

FD-302 (Rev. 5-8-10)



## FEDERAL BUREAU OF INVESTIGATION

Date of entry      02/24/2015

On January 30, 2015, Bureau of Land Management Special Agent Mark Brunk (hereafter referred to as Brunk) was interviewed by Special Agent (SA) Joel P. Willis at the District Courthouse, 333 South Las Vegas Blvd, Las Vegas, Nevada. Also, present during the interview were Assistant United States Attorneys Steven Myhre, Dan Schiess, Nadia Ahmed and Roger Yang. The purpose of this interview was to collect clarifying information from Brunk pertaining to his observations prior to and during the standoff between the Bureau of Land Management (BLM) and armed militia on April 12, 2014. Prior to the interview, Brunk was provided a copy of the FBI FD-302 and BLM Memorandum of Activity (MOA) which document his original statements relating to the stand-off.

After reviewing his FD-302, Brunk made the following clarification:
• In paragraph three, Brunk advised he never acted as a spotter/observer for a BLM sniper, nor did he ever tell the FBI he acted as a spotter/observer for a BLM sniper during his original interview.
• In paragraph five, Brunk stood next to a vehicle, but not his vehicle, with binoculars, scanning the crowd for weapons and clothing descriptions.
• In paragraph six, Brunk recalled seeing people at the ICP, but did not know these people by name until he was shown a picture of these individuals following the stand-off.
• In paragraph seven, Brunk noticed the presence of women and children near armed individuals during the stand-off, but he did not think these armed individuals were using women and children as human shields until after the stand-off.
• Also in paragraph seven, armed protestors were flanking the BLM and moving to high ground.
• In paragraph eight, Brunk saw but could not identify a sniper in position on the northbound lane of the I-15.
• In paragraph ten, in addition to the criminal activity surrounding the stand-off at the ICP, specifically protestors blocking the I-15 and pointing their weapons at the BLM Agents, Brunk saw other criminal

---

Investigation on   01/30/2015   at  Las Vegas, Nevada, United States (In Person)

File   100T-LV-4739895-302                                Date drafted   02/06/2015

by   Joel P. Willis

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

100T-LV-4739895-302

Continuation of FD-302 of   Interview of Bureau of Land Management
Special Agent Mark Brunk.                          , On   01/30/2015  , Page   2 of 2

activities, including reckless driving and Jimmie Fuller's incursion into
the prohibited operation area.

Following the interview, the above mentioned interviewers reviewed Brunk's
FD-302 and BLM MOA, as well as any notes created during the interview. It
was concluded the statements made by Brunk during his interview, with
exception to the above mentioned FD-302 clarification, were consistent with
the statements made in his FD-302 and BLM MOAs.

Notes taken by SA Willis during Brunk's interview, copies of his FD-302 and
BLM MOA, and a copy of a photograph labeled where Brunk observed
individuals with guns on the I-15 northbound bridge and under the
southbound I-15 bridge, are physical and digitally attached.